UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**CHRISTOPHER LEE WAINWRIGHT**          **CASE NO. 3:20-CV-00961**

**VERSUS**          **JUDGE TERRY A. DOUGHTY**

**WILLIAM ROBERT WOODWARD**          **MAG. JUDGE KAYLA D. MCCLUSKY**

**REPORT AND RECOMMENDATION**

Before the undersigned is a motion to dismiss filed by Defendant William Robert Woodward ("Trooper Woodward"). [doc. #22]. Plaintiff Christopher Lee Wainwright ("Wainwright") does not oppose the motion. For the reasons assigned below, it is recommended that Trooper Woodward's motion be granted, and Wainwright's claims be dismissed with prejudice.

**I.     FACTUAL BACKGROUND**

On August 8, 2019, at approximately 2:24 a.m., Trooper Woodward, an officer for the Louisiana State Police, stopped Wainwright for driving erratically and for violating LA. R.S. § 32:104 (failing to signal 100 feet prior to turning). [doc. #s 9-1, p.1; 22-1, p. 5]. As Wainwright exited his vehicle, Trooper Woodward observed that Wainwright had dilated pupils, bloodshot eyes, and a strong odor of alcohol on his breath. *Id.* Accordingly, Trooper Woodward conducted field sobriety tests, and, after determining that Wainwright was intoxicated, Trooper Woodward arrested him for driving while impaired (6th offense), well as other additional

charges.[1]  *Id.*  Trooper Woodward also provided an affidavit to obtain a warrant for a blood sample from Wainwright.  [doc. #9-1, pp. 3-4].

On July 28, 2020, Wainwright filed suit in this Court under 42 U.S.C. § 1983, alleging that there was no probable cause for the traffic violations for which Wainwright was cited or the subsequent blood test.  [doc. 5;[2] *see also* doc. #9, pp. 1-2].  To support his allegations, Wainwright submitted dash camera footage from both his and Trooper Woodward's vehicles, which he claims shows that he "obeyed all traffic laws."  [doc. #10, p. 2].  He additionally attached eighteen pages of documents to his amended complaint, which have been incorporated by reference.  [doc. #9-1].

On October 28, 2021, Trooper Woodward filed the instant motion to dismiss for failure to state a claim.  [doc. #22].  Trooper Woodward argues that there can be no violation of the Fourth Amendment under § 1983 or Louisiana law[3] because there was probable cause to stop Wainwright, conduct field sobriety tests, and arrest him for driving while impaired.  *Id.* at 11-13.  Trooper Woodward also argues that there was probable cause to support the warrant for the blood sample because Wainwright cannot show that Trooper Woodward made "a false statement knowingly and intentionally, or with reckless disregard for the truth" or that Trooper Woodward's statements were even necessary in finding probable cause for the warrant.  *Id.* at

---

[1] The Office of the District Attorney declined to prosecute the charges other than the DWI.  [doc. #9-1, p. 18].

[2] Wainwright's original complaint [doc. #1] was not filed on the proper forms.  He properly submitted the forms on or about August 20, 2020.  [doc. 5].

[3] Wainwright, acting pro se, has used the forms for a § 1983 claim.  However, Trooper Woodward contends that he is entitled to dismissal of the claims against him whether they were asserted solely under § 1983 or also under Louisiana law.

12-13. Finally, Trooper Woodward argues that, if Wainwright has stated a claim, any such claim is barred by qualified immunity. *Id.* at 14.

On November 1, 2021, the Court issued a notice of motion setting, affording Wainwright three weeks to file a response to Trooper Woodward's motion to dismiss. [doc. #25]. However, Wainwright failed to file a response. Accordingly, this matter is ripe.

## II. LAW AND ANALYSIS

The Federal Rules of Civil Procedure allow dismissal of a claim for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). To state a claim, the pleading must contain a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED.R.CIV.P. 8(a)(2). While the pleading need not assert detailed factual allegations, it must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the Trooper Woodward is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663 (2009). To determine whether the plaintiff has stated a claim, the court is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced in the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010).

In deciding a motion to dismiss, the Court must accept as true all of the plaintiff's allegations, unless the allegation is a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements." *Id.* Although legal conclusions may be asserted, "they must be supported by factual allegations" to gain the assumption of truth. *Id.* at 664. A

3

well-pleaded complaint may proceed even if it strikes the Court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, the Court may dismiss a complaint "if it clearly lacks merit – for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation omitted).

In ruling on a motion to dismiss, the Court may consider all "documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (internal quotations and citation omitted). Here, the Court considered the documents attached to Wainwright's amended complaint, which included (1) Trooper Woodward's affidavit for arrest without probable cause; (2) the affidavit for the search warrant; (3) Wainwright's booking information; (4) the search warrant; (5) the return of the search warrant; (6) the blood collector's receipt; (7) Wainwright's DWI citation and the report of the arrest; and (8) the District Attorney's letter declining to prosecute certain charges. The Court also considered dash camera footage from both Wainwright and Trooper Woodward's vehicles, which was attached to Wainwright's amended complaint, as well as the instant motion to dismiss.[4]

---

[4] Trooper Woodward also attached to his motion to dismiss body cam footage from the field sobriety tests Wainwright performed. Because this footage was not mentioned in Wainwright's complaint, the undersigned did not consider it in making her report and recommendation. If the footage had been considered, however, the instant motion would have been converted to a motion for summary judgment. *See Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 661 (5th Cir. 1979). Under a motion for summary judgment standard, the undersigned would still recommend that the Court dismiss Wainwright's claims.

### A. *Wainwright's Claim for Unlawful Stop*

The Fourth Amendment protects persons from seizures, including seizures that involve only a brief stop short of traditional arrest. *See Terry v. Ohio,* 392 U.S. 1, 16-19 (1968). A so-called *Terry* stop is generally deemed reasonable when the officer has probable cause to believe that a traffic violation has occurred. *Id.* at 30; *Whren v. U.S.*, 517 U.S. 806, 810 (1996); *see also State v. Turner*, 118 So.3d 1186, 1191 (La. App. 5th Cir. 5/16/13) (finding the same under Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures.). Louisiana Revised Statute § 32:104 requires a driver to signal a turn at least 100 feet ahead of the turn, and an individual's failure to comply with this law constitutes probable cause for an initial stop. *See Turner*, 118 So.3d at 1191 ("Deputy Collins observed Defendant's vehicle turn right without using a turn signal, which is prohibited by La. R.S. § 32:104(B). . . Thus, Deputy Collins had probable cause to pull the vehicle over for a traffic violation.").

Wainwright appears to allege that Trooper Woodward stopped him illegally, despite Trooper Woodward's statements that Wainwright drifted off the road and onto the shoulder, made a wide turn, and failed to timely signal a turn. [doc. 1, p. 3]. In support of his claim, Wainwright submits dash camera footage from both his car and Trooper Woodward's squad car. The dash camera footage admittedly does not clearly show Wainwright drifting onto the shoulder or making a wide turn. However, the footage from Trooper Woodward's vehicle very clearly shows that Wainwright failed to use his turn signal 100 feet in advance of his turn, thus violating La. R.S. § 32:104. *See* [22-3, Manual Attachment, Exhibit B, at 00:12-00:24]. Therefore, Trooper Woodward had probable cause to believe that Wainwright committed a traffic violation, and, thus, the traffic stop did not violate Wainwright's Fourth Amendment rights.

B. *Wainwright's Claim for Unlawful Detention and Arrest*

Wainwright also asserts that his constitutional rights were violated when he was unlawfully detained and arrested.

Challenges to traffic stops are analyzed under a two-step inquiry. *United States v. Bams*, 858 F.3d 937, 942 (5th Cir. 2017); *see also United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013). The undersigned has already concluded at the first step that Wainwright's initial stop was justified, but, even if the stop was justified at its inception, the second step requires a determination "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Id.* (quoting *Andres*, 703 F.3d at 832). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop[, and] . . . the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Fla. v. Royer*, 460 U.S. 500, 500 (1983). "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *United States v. Pack,* 612 F.3d 341, 349–50 (5th Cir.), *opinion modified on denial of reh'g,* 622 F.3d 383 (5th Cir. 2010); *see also* LA. CODE CRIM. PROC. art. 215.1(D) (after conducting a traffic stop, "an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, *absent reasonable suspicion of additional criminal activity*.") (emphasis added).

"Reasonable suspicion is something less than probable cause, but something more than an officer's 'hunch' that requires, when assessing the totality of the circumstances, a

6

'particularized and objective basis' for suspecting legal wrongdoing." *Vincent v. City of Sulphur*, 28 F.Supp.3d 626, 646 (W.D. La. 2014). An officer has reasonable suspicion when she "can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants the seizure." *Id.* (quoting *U.S. v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002)) (internal quotations omitted).

On the other hand, to make a warrantless arrest, the officer must have probable cause. *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). A police officer has probable cause when "the facts available to [her] would 'warrant a [person] of reasonable caution in the belief' that . . . evidence of a crime is present." *Tex. v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. U.S.*, 267 U.S. 132, 162 (1925)). "Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. U.S.*, 571 U.S. 320, 338 (2014) (internal quotations and citations omitted).

It is unclear whether Wainwright asserts claims against Trooper Woodward for illegally detaining him to conduct field sobriety tests and/or for his allegedly unlawful arrest. However, out of an abundance of caution, to the extent Wainwright does challenge the constitutionality of these detainments, Wainwright's claims should be denied. Whether analyzed under federal or state law, an officer may detain a motorist for additional reasonable period of time if the officer has reasonable suspicion of further criminal activity. After Trooper Woodward lawfully pulled Wainwright over for a traffic violation, Trooper Woodward alleges that he observed Wainwright exhibiting signs of intoxication. Trooper Woodward has attested that Wainwright "was swaying as he stood, displayed gait ataxia, had red droopy eyes with very dilated pupils, fumbled with [his] license, had slowed slurred speech and had an odor of an alcoholic type beverage on his breath that was strong when he spoke." [doc. 9-1, pp. 3-4; *see also* doc. 9-1, p. 1]. Based on

these observations, Trooper Woodward had the particularized basis necessary to suspect that Wainwright was driving while intoxicated. Accordingly, Trooper Woodward did not violate Wainwright's Fourth Amendment rights by detaining him for the purpose of field sobriety tests.

Likewise, Wainwright's Fourth Amendment rights were not violated by his ultimate arrest either. Trooper Woodward attests that Wainwright "did very poorly on [the field sobriety tests] and was very obviously too impaired to drive safely [sic]." [doc. 9-1, p. 4]. After determining that Wainwright had failed the field sobriety tests, Trooper Woodward determined that he was intoxicated and unable to legally operate a vehicle. *Id.* Accordingly, Trooper Woodward placed Wainwright under arrest. *Id.* Wainwright's failure to adequately complete field sobriety tests constituted a fair probability that Wainwright was legally impaired and, thus, committing a crime by driving while intoxicated. Accordingly, Trooper Woodward did not violate Wainwright's Fourth Amendment rights because he had probable cause to place him under arrest for driving while intoxicated.[5]

### C. Wainwright's Claim for Unlawful Affidavit and Warrant to Obtain Blood Sample

A warrant obtained based on false statements violates a defendant's Fourth Amendment rights when (1) the affiant made statements in support of the warrant which the affiant knew were false or would have known were false, except for reckless disregard for the truth; and (2) the remaining parts of the affidavit would have been insufficient to support a finding of probable

---

[5] To the extent Wainwright is attempting to assert a Fourth Amendment claim under the Louisiana Constitution, his claim also fails as set forth above. If he attempts to state a claim for the torts of false imprisonment or false arrest, Wainwright is required to show that he was unlawfully detained. *Harris v. Eckerd Corp.*, 35,135 (La. App. 2 Cir. 9/26/01), 796 So. 2d 719, 722. However, as discussed *supra*, Trooper Woodward lawfully detained him.

cause. *Franks v. Del.*, 438 U.S. 154 (1978). "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171.

Wainwright appears to claim that Trooper Woodward made certain untrue claims to obtain a warrant to take a blood sample from Wainwright, and, thus, that there was no probable cause for the warrant. [doc. 9, p. 1]. Wainwright claims that he did not commit any driving infractions, implying that Trooper Woodward's allegations that he made a wide turn, drifted out of his lane, and failed to timely signal are untrue. [doc. 9, p. 1]. As an initial matter, the videos submitted by Wainwright show very clearly that he failed to signal at least 100 feet before his turn, which is a violation of LA. R.S. § 32:104. *See* Exhibit B, at 00:12-00:24. While the videos are admittedly unclear as to whether Wainwright made wide turns and/or drifted outside of his lane, Wainwright's failure to properly signal is a driving infraction which permitted Trooper Woodward to pull him over.

Moreover, even if some of Trooper Woodward's statements in his affidavit were incorrect, Wainwright has failed to show that these statements were made intentionally, or with reckless disregard to the truth. Wainwright has not asserted this, nor has he shown evidence that Wainwright's false statements, if there were any, were not merely misunderstandings.

Similarly, Wainwright has not shown that but-for the alleged false statements, the warrant would not have been issued. First, at the least, Trooper Woodward's statement that Wainwright violated LA. R.S. § 32:104 is true. Second, there are no allegations that Trooper Woodward's other attestations as to Wainwright's condition during the traffic stop are false. Therefore, even if the complained-of statements – namely, the driving infractions – were removed from the search warrant affidavit, Wainwright's demeanor during the traffic stop still would have established probable cause for a blood sample warrant.

### D. *Wainwright's Claim for Malicious Prosecution*

Under federal law, there is no "freestanding constitutional right to be free from malicious prosecution." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003). Rather, the United States Supreme Court has explained that malicious prosecution claims are based in the Fourth Amendment. *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Accordingly, to the extent that Wainwright seeks to assert a claim for malicious prosecution under federal law, Wainwright's claims must fail because Wainwright has failed to state a claim under the Fourth Amendment.

To assert a cause of action for malicious prosecution under Louisiana law, Wainwright must show (1) the commencement or continuation of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. *Deville v. Marcantel*, 567 F.3d 156, 173 (5th Cir. 2009) (internal quotation omitted).

Wainwright's state law claims for malicious prosecution, if he intends to assert them, fail. Wainwright was arrested for five offenses: improper lane use, improper turn, no driver's license on person, driving under suspension, and driving under the influence. [doc. #22-1, p. 9]. Wainwright's claims for the first four offenses must fail because proceedings on these charges never commenced. *See Dyas v. Shreveport Police Dept.*, 136 So.3d 897, 902 (La. App. 2 Cir. 2014) (dismissing Plaintiff's malicious prosecution claim for murder charges "because no prosecution on the murder charges was ever instituted"). As for Wainwright's claim for driving under the influence, there was probable cause, as discussed *supra*.

10

In sum, Wainwright has failed to state a claim for malicious prosecution under federal and state law. Accordingly, it is recommended that Wainwright's claims for malicious prosecution, to the extent he asserts them, be dismissed with prejudice.

### E. Qualified Immunity

Trooper Woodward also urges the Court to find that the claims against him must be dismissed due to qualified immunity. However, if the undersigned's report and recommendation is adopted, there will be no need to reach this argument. Accordingly, to the extent that Trooper Woodward argues that the claims against him should be dismissed based on qualified immunity, it is recommended that Trooper Woodward's motion be denied as moot.

### III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Woodward's motion to dismiss be **GRANTED**, and Wainwright's complaint be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Federal Rule of Civil procedure Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 18th day of March, 2022.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE